Good morning all. Our first case for argument this morning is Conley v. Birch. Mr. Robinson. Thank you, your honors, and good morning. May it please the court I'd like to reserve two minutes for rebuttal. Thank you very much. There are two issues for resolution at the court this morning. The first is whether the district court in this case properly assessed the facts at summary judgment, and the second is whether a proper assessment of the facts would allow a jury to reasonably conclude that Dr. Birch was deliberately indifferent to Mr. Conley's serious medical needs. As we explained more fully in our briefs, the answer to the first question is no, and the answer to the second question is yes. Now the district court made two errors in its factual assessment at the summary judgment stage. First, the court failed entirely to consider two key pieces of evidence that were relevant to Dr. Birch's knowledge of Mr. Conley's medical needs. Second, even the facts the court did consider weren't considered in the light most favorable to Mr. Conley, and in combination these mistakes created a kind of factual caricature that the district court improperly relied upon in granting summary judgment to Dr. Birch. Now the first piece of evidence the district court ignored is the fact that after his personal assessment of Mr. Conley, nurse Potts concluded and wrote down that he believed Mr. Conley's hand was probably fractured. Nowhere in the court's opinion is this discussed despite the fact that it's plainly relevant to Dr. Birch as she attempted to gauge the nature and seriousness of Mr. Conley's medical condition remotely to know what his diagnosis was. Is there a factual basis for us to infer that nurse Potts conveyed this information to Dr. Birch? We believe that there is, Judge Sykes, because first of all, both parties stipulate and agree that it's reasonable to infer that his assessment to Dr. Birch, and the reason for that is it was protocol. Dr. Birch recognizes this in her own deposition, and therefore we believe that a jury could reasonably infer that nurse Potts communicated one of the most important notes that he wrote down. And the inference arises from that protocol alone because neither party remembers the conversation? That's correct, that's correct. In addition to that fact, the court also didn't consider the fact that after he and communicated Mr. Conley's medical condition to her, nurse Potts returned to Mr. Conley and admitted that there was nothing he could do for him because of the holidays. And we believe this is relevant because it tends to show that nurse Potts went to Dr. Birch, communicated the seriousness of Mr. Conley's condition, including what he believed his treatment needs to be, and was denied the authority to provide that treatment because of a holiday-related reason. Well, is there something in the document that suggests that nurse Potts recommended an x-ray? Only the fact that he wrote down that this was a probable fracture, and that it would be reasonable, specifically when you couple that with the fact that he immediately referred Mr. Conley's condition to Dr. Birch, that he would have communicated the need for an x-ray in this case. In addition to failing to consider entirely certain pieces of evidence, the court also didn't consider the body of evidence that it did assess in the light most favorable to Mr. Conley. And what I'm specifically referring to here are the details that Mr. Conley used in articulating his complaints, and that nurse Potts alluded to in his assessment. It isn't appropriate at this to the point that Mr. Conley alleges it looked like a boxing glove swollen up real big. In addition, it isn't accurate to describe his hand as generally and sort of partially suffering from limited motion. Instead, what's important is the fact that despite the fact that he was struck only on his palm, Mr. Conley's entire hand suffered loss of function, including all four fingers and thumb. It's this kind of detail that is particularly relevant to Dr. Birch as she was trying to decide for herself how serious is this injury. And for that reason, we believe that those facts needed to be considered by the district court. Now, with a full and fair analysis of the facts in this case, it's our belief that a jury would be reasonable in determining that Dr. Birch knew Mr. Conley's medical condition was serious and strongly suspected that the actual seriousness of his condition included a fractured bone, and therefore, that they would be justified in finding Dr. Birch deliberately indifferent under this court's case Ortiz v. Webster. But that has to be inferred, right? It has to be, what has to be inferred? The seriousness that he had a broken hand. It needs to be inferred, right. Our argument is that a jury could reasonably infer based on the severity and peculiarity of the symptoms in this case, plus the fact that for whatever reason, Nurse Potts felt the need to write down that he believed his hand was probably fractured, that the jury could infer that Dr. Birch knew that the condition was serious. But that inference is supported by the fact that when Nurse Potts returned to Mr. Conley, he said, there's nothing I can do for you because of the holidays, seeming to suggest that he told Dr. Birch exactly how serious this was, including what treatment needs were required. So it needs to be inferred, but there's circumstantial evidence to support that inference. Is it agreed that the failure to order an X-ray on the 24th of December is deliberate indifference? Well, what we're trying to point out is that in the Ortiz case, the conduct that was determined to be deliberate indifference was a failure to either evaluate or treat. And it just so happens that in cases where you're dealing with a possibly fractured hand, the method of evaluation is an return from her vacation and personally evaluate the injury as a method of evaluation to determine whether or not the fracture was actually there. But she didn't do that either. There was no evaluation, which normally would be an X-ray, and there was no precautionary treatment that was reasonably designed to abate the risk of a fracture. There was just ice and ibuprofen, which didn't do anything to avert the harm that eventually befell Mr. Conley. Well, that's what my question is directed at, to get over the deliberate indifference threshold. This is not a medical malpractice case. It's not mere negligence. So I was inquiring about whether the parties agree that ice and ibuprofen is so egregiously inadequate for a hand fracture that it amounts to deliberate indifference. Assuming there's a factual question on her state of mind and that she was told and therefore knew that this was a probable fracture, that it required more than ice and ibuprofen, in other words, an X-ray and immobilization. I can't speak for opposing counsel, so I don't know if he agrees. But there are certainly cases that suggest that if you do some things, that's not necessarily enough, and that the kind of treatment that is provided has to be reasonably calculated to abate the risk that is faced. And in this case, the risk was improper bone fusion, which actually ended up happening. And ice and ibuprofen do nothing to reasonably abate the risk of improper bone fusion. So in our view, this treatment is clearly deficient. It's something, but that's not enough necessarily under the Eighth Amendment. But that wasn't neglecting the injury, though, was it? It wasn't entirely neglecting the injury, but in the Ortiz case, there wasn't a complete neglect either. In that case, there were further evaluations made. He made a mistake, but he still didn't neglect it. He wasn't deliberately indifferent to it. Again, our view is that you don't have to completely ignore a case in order to be found deliberately indifferent. You can show deliberate indifference even by providing some minimal form of treatment. That minimal treatment here was ice and ibuprofen, but it did nothing to address the seriousness of the injury risk. Let's see if my time is up. Was Dr. Birch asked in deposition whether she agreed that if this was a probable fracture, that was grossly inadequate treatment? She agreed that in certain situations, she would normally be asked to authorize an x-ray, and she would. This was a case where she would be asked for authorization to provide for an x-ray, but didn't. The question in our mind is why? There is no evidence of medical judgment being made in this case. There is only evidence that she wanted to maintain her vacation. With that, I'll wait for my rebuttal. All right. Thank you, Mr. Robinson. Mr. Dugan? Thank you. Good morning. Tim Dugan for Defendant Appellee Dr. Kim Birch. This case boils down very simply to two issues. Issue number one is what Dr. Birch knew on the evening of December 24, and issue number two is whether her response that she gave to that information vested with the knowledge that she had was appropriate. With respect to the knowledge that she had, the plaintiff has suggested in his brief that the District Court minimized, ignored, or mischaracterized certain elements of what Dr. Birch knew on the evening of December 24. I think part of the confusion here is that the plaintiff is confusing the discussion between Mr. Conley and Nurse Potts with the discussion between Nurse Potts and Dr. Birch. Well, actually, no. We've got an objective patient note made by Nurse Potts, and I thought it was based on the protocol in the prison that this information would have been conveyed. It is, Your Honor, and I do agree with that. However, the information that Nurse Potts got from Mr. Conley is very different from what is included on the two notes that Nurse Potts wrote. The information, for example, about the hand being swollen up to the size of a boxing or in the nurse's notes, severe pain or swelling, discoloration, limited motion, possible probable fracture, hand swollen, discoloration, something that I can't read, and all fingers swollen, limited movement of all four fingers to thumb. So this is being reported as a possible probable fracture hand. Correct. Those are the words that are used on the report, and both the doctor and the nurse have testified that that information was probably reported to the doctor during the phone call. Right. I mean, why else would the nurse be calling the doctor? The nurse wouldn't be calling the doctor for a contusion. So Dr. Birch's suggestion in her deposition that this could either be a contusion or a fracture strains credulity. Correct. So let's take that off the table. She's being told that there's a probable fracture. Okay. Fair enough. And then if we go to the end of the day, she ordered ibuprofen and ice, which under the circumstances for that kind of injury are perfectly reasonable. People injure fingers, toes, thumbs. Fracture. We're presuming fracture. Probable fracture. She does not have actual knowledge of a fracture. She can't because there's no x-ray. That begs the question, right? Whether she needed to order one in order not to be found deliberately indifferent. If we're assuming that this was reported to her as a probable fractured hand, how can it not be deliberate indifference to refuse to order an x-ray and immobilization? Because of the nature of the injury, Your Honor. If you look at what is written down, it does say probable fracture. However, she also testified in her deposition that she typically deferred to the expertise of the nurse as to whether or not to order the x-ray. And she didn't order one. The inference from that is that Nurse Potts did not suggest one. Obviously, we don't know for sure because neither one of them remember. Why isn't that a jury question? What inferences she drew from what Nurse Potts was telling her based on what's in this report since neither of them remember the phone call? Because mostly because of what's not in the report. This is at best from her case a possible fracture, even a probable fracture. However, none of the more serious injuries, serious deformity, which would be the best indicator of a fracture short of an x-ray. There is no vascular problem. There is no neurological problem. The entire hand is involved. The entire hand is discolored and he can't move any of his fingers. Again, people hurt their hands all the time. Typical treatment for people, absent some of those more significant findings, I've slammed my finger in the car door and it's bent at a 45 degree angle in a place that it should be. The whole hand. I would submit that one of the standards for deliberate indifference, Your Honor, is that a lay person would recognize the need for treatment. I think most lay people, absent those more severe symptoms, would do exactly what Dr. Birch did, which is put some ice on it, take some Tylenol and watch it for a couple of days before deciding whether or not to proceed further. Now, again, why isn't that a jury question then? I don't think it is. Why are we deciding this as a matter of law? Drawing the inferences in the light most favorable to the plaintiff from the information that's in this report, which we're agreeing was conveyed to the doctor. There is no evidence or no suggestion, no inference that can be drawn that it had to be ordered right away, particularly given that she doesn't think the nurse suggested it because it wasn't ordered. Had the nurse suggested it... Why is that the only reasonable inference to draw? Because that's the only one that can be drawn from that set of circumstances. The doctor testified... Why? Why can't a reasonable jury draw the opposite inference that, confronted with this information, it was deliberately indifferent not to order an X-ray and immobilization? All she had to do was... Or come in to look at it herself and rule out a fracture. All she had to do was tell the nurse, literally, all she had to do was say, please order an X-ray. Had she actually thought it... She didn't do that, so why can't the jury infer that that was deliberate indifference? In the context of the entire scenario, with all the facts that we have, she took the phone call. There's no question about that. She listened to the report. She issued orders. I suppose a jury could conclude, possibly, that that's negligence. I don't think it is, but I suppose they could conclude that. But she put forth some effort. She listened to what was told to her, and she issued orders. They may have been wrong. It sounds like a jury argument to me. There's inferences that go both ways here. I understand, respectfully disagree, Your Honor, but I understand. With respect to the injury itself, in the Jackson v. Pullian case out of this court, the court has indicated that in the case of delay, which this one is, it's not a denial of treatment, it's a delay, the plaintiff needs to put forth some verifying medical evidence that the delay actually caused some kind of problem for him. In this case, we have a four, four-and-a-half-day delay between the time Dr. Burch got the phone call and the time that the... It's actually longer than that because she places the order for an x-ray on the 29th, and it wasn't... There was a week delay before he was going to be seen for an x-ray. Sure. And then there's an issue about whether he refused it, but there's a factual question on whether that occurred or not. Sure. Under 1983 analysis, for Dr. Burch to be found deliberately indifferent, she has to be personally involved. She's not responsible for anything that happens after she writes the order. But she knows he's not going to be seen for the x-ray for a week based on, or at least there's a reasonable inference that she knew what the x-ray schedule was, and she could have ordered it to be done immediately, right? Rather than on the, whatever it was, Tuesdays and Thursdays or something like that. I believe it was, yes. She could have. I suppose had she felt it necessary, she could have. She didn't feel it necessary, and under the standards from Farmer versus Brennan, she has to actually draw the inference, and she didn't. That's why she didn't order any further testing on the evening of the 24th. That's why she didn't order the x-ray right away on the 29th when she saw him. And all the delays after the fact were not her fault, her responsibility. And there has been no verifying medical evidence to suggest that the four-day delay caused any of his problems. There were numerous delays after she ordered the x-ray on the 29th. There was the issue that you mentioned with getting the x-ray. There were scheduling problems getting into the orthopod. The plaintiff's expert, Dr. Schlafly, suggested that the entirety of the process may have caused some problem for him, but it doesn't specify that four-day delay, four-and-a-half-day delay, as being part of the process. And it's very reasonable to suggest that people will... What's the standard for causation? I'm sorry? What's the legal standard for causation? I'm not sure I understand your question in this context, Your Honor. Well, you're making a causation argument, right? Yes. So I'm asking what the legal standard for that is. That would be the one from Jackson v. Pullian, that they have to offer some verifying evidence. And there's no testimony in this case that the four days caused any kind of problem, none at all. Well, I question whether that's the correct standard. It has to cause injury or the injury that's being complained of, but it's not the sole cause. Correct. It has to distinguish the injury itself, the underlying injury as being the cause of the problem, which in this case is a finger lag, versus the delay causing the problem, which is a finger lag. I have no further argument, Your Honor. Is there any questions I can answer? Well, your expert testified that ideally a person in Connolly's position should have had an x-ray in three to five days. That was the plaintiff's expert, Your Honor. Yeah. But three to five days. That is what he said, yes. And Dr. Virch ordered it on the morning of day four. Knowing it wouldn't be done for another week. I don't believe she was asked that specifically at her deposition. But it was inference, yes. Tuesdays and Thursdays, yes. Okay. Thank you. Thank you. Mr. Robinson. So the first thing I'd like to do is just dispel the notion that causation is in any way at issue on appeal. The district court made the correct determination that Mr. Connolly placed verifiable evidence through his expert witness in the trial record that indicated that the delay may have caused the injury that he suffers from today. So I don't understand that issue being even an issue on appeal. But really what I want to get across to the court today is the principle we're trying to vindicate here is the same principle that was announced and applied in Webster, which is that when a doctor strongly suspects that an underlying condition is present, including the actual seriousness of a medical condition, he's not free to refuse to verify whether that condition actually exists. And a proper articulation of the facts in this case would allow a jury to conclude that Dr. Birch knew that there was a strong likelihood that Mr. Connolly's hand was fractured. And therefore, she was not free, unfortunately for her, to continue to enjoy her five-day Christmas vacation without putting something in motion to try to determine exactly what the true extent of Mr. Connolly's injury was. It's absolutely true today that Mr. Connolly suffers from extension lag in his hand, which Mr. Robinson, your expert was asked whether Dr. Birch's conduct on the 29th was reasonable. Right. I guess in her... Well, he wasn't asked that. Yes, he was asked that in so many words. And he said no, because she did not... No, no. He said yes. Well, I think that the question was asked a little bit... He was asked in general, given the information that Dr. Birch was given, what would the appropriate course of treatment be? And he said providing an x-ray within three to five days and offering a splint. Yeah. And neither of those two things happened in this case. No, but was your expert asked whether on the 29th, five days out, and an x-ray was ordered that day, would you consider her conduct to be reasonable? And your expert said yes. My understanding was... Well, that's the way I read the record. Yeah. My understanding of that part of that deposition, and I can't recall it exactly at this point, I'm sorry for that, was that he was asked would it have been reasonable for her to conduct an x-ray at that point. And she didn't. I know what she did and what she didn't do. But I'm just trying to highlight that the expert that was engaged to make a professional assessment of the conduct on the 29th. I understand your position about the 24th. Right. It was reasonable. Well... Maybe it's a different context. Again, yeah. Again, my understanding of the expert's opinion was when you're given the information that Dr. Birch was given on the 24th, what would be reasonable treatment? And he was asked would it have been reasonable to have had an x-ray on the 29th, which would have been within the five days. She saw him within the five days, but as Judge Sykes pointed out, didn't actually authorize an x-ray for another week, which is far outside the timeline that he indicated was reasonable. She didn't authorize it... When did she authorize the x-ray to be taken? It was on the 29th when she returned from her vacation. But she didn't authorize it. She scheduled it for a week down the road. Did the deposition indicate how she went about, that is, Dr. Birch, scheduling this? Was that a phone call? No, she had returned at that point. I understand. But what constitutes ordering an x-ray in this case? I believe it was just putting him down for the next... You had the opportunity to order an immediate x-ray. Otherwise, you could... What's the ministerial thing? Did she just have to make a phone call? She just said, next time the van comes by, which would have been a week from then. There was a weekly sort of transport, I believe. Yeah, but you've been emphasizing, and maybe appropriately so, this holiday break. Yeah. But I'm just trying to draw the inference that might be allowable for a reasonable jury. Yeah. If all she had to do was make a phone call on the 24th, it wasn't a holiday matter, was it? Even on the 29th? Well, you would prefer she did it, obviously, on the 24th, or you're suggesting she should have. So holiday didn't seem to have anything to do with it. On the 29th, you mean? Yeah, I mean, the inference is she's away, she's not going to be bothered by this. Yeah. I don't know whether that's true or not, and Judge Sykes suggests that might be a jury question. But if it's just a phone call, then the decision to make a phone call on the 29th versus the 24th would not seem to be impacted by whether you were at home making that call or Dr. Birch was at on-site at the office. Well, I can't speak for Dr. Birch as to why, but our deliberate indifference analysis in this case was focused on the 24th, that just the delay of five days was enough, given the way that she knew and testified as to knowing the way that bones heal, that she knew that things needed to happen quickly, and that was supported by the expert witness. So it was only that five days that we're really focusing on as the deliberate indifference time period. All right. Thank you very much. Thank you, Mr. Robinson. Thank you, Mr. Dugan. Mr. Robinson, you represented Mr. Connolly on appeal, right? That's correct, yes. And you have the additional thanks of the court for accepting that responsibility. Oh, of course. It was my pleasure. Thank you. Thank you. Case is taken under advisement.